**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:21-cr-605(2) (RC)** |
| | **:** | |
| **AARON JAMES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' RESPONSE TO DEFENDANT AARON JAMES'S
OPPOSITION TO MOTION TO REVOKE RELEASE ORDER**

Aaron James was captured on video committing multiple violent crimes during his hours-long attack on the U.S. Capitol Building – and the heroic officers that defended it – on January 6, 2021. In order to ensure that he does not further threaten the safety of the community while he awaits trial, he was ordered by the Court to comply with pretrial supervision and barred from possessing weapons that would endanger the supervising officers and the public. But James has repeatedly, knowingly, and unapologetically violated those conditions since October and acted in a manner so threatening that the officers feared for their safety and asked to discontinue supervising all defendants in his parents' house. Rather than rebut the presumption that his continued release represents a danger to the community or he is unlikely to abide by any condition or combination of conditions of release, James submits frivolous and deceptive arguments and attacks his Pretrial Services Officer—a representative of this Court—as "unreasonable" and "unprofessional." James's glib rhetoric is insufficient to sustain his burden to avoid detention.

**I.     The Nature and Circumstances of the Offenses and Weight of Evidence**

James dedicates just two short sentences in his 30 page submission to the numerous and egregious crimes of which he is accused. He argues only that the Court must presume him innocent and dismisses the Government's factual allegations as "highly imaginary." *See* ECF No. 63 at 6. Of course, the *first two factors* that the Court must consider when deciding whether James

represents a flight risk or a danger to the community are "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence[,]" and (2) the weight of the evidence against the person[.]" 18 U.S.C. § 3142(g)(1) & (2).  That is, before considering James's "clean record" and status as a "decorated U.S. Navy veteran, honorably discharged," the Court first must review the evidence that will establish that James sullied that record and betrayed his service to our Nation by attacking its Capitol on January 6, 2021.

James currently[1] is accused by indictment of eight federal offenses – civil disorder; assaulting, resisting, or impeding officers using a deadly weapon; entering and remaining in a restricted building or grounds with a dangerous weapon; disorderly and disruptive conduct in a restricted building or grounds with a dangerous weapon; engaging in physical violence in a restricted building or grounds with a dangerous weapon; disorderly conduct in a Capitol building; act of physical violence in the Capitol Grounds or buildings; and parading, demonstrating, or picketing in a Capitol building.  *See* ECF No 35.  For these alleged crimes, some of which constitute crimes of violence, he faces significant prison time, including up to 20 years of imprisonment for each violation of 18 U.S.C. § 111(a)(1) and (b); ten years imprisonment for each of his violations of 18 U.S.C. § 1752; and five years of imprisonment for each violation of 18 U.S.C. § 231 and 40 U.S.C. § 5104(e).

While his presumption of innocence at trial is by no means "quaint, old fashioned, or even irrelevant in the eyes of the government," ECF No. 63 at 7, it does not take a "highly imaginary" mind to envision James's conviction on all counts.  That is because each of James's egregious crimes were captured on video.  There can be little factual or legal dispute that James engaged in

---

[1] The Government reserves the right to seek a superseding indictment to add additional violations of 18 U.S.C. §§ 231(a) and 111(a)(1) & (b)(1)(A) that have been discovered during its investigation.

a crime spree on January 6, 2021, including unlawfully (1) moving police barricades to allow the

mob to advance on the Capitol Building:



(2) entering the Capitol Building among the first few rioters to breach the Rotunda Doors and then

interfering with officers who were attempting to block further entry:



(3) taking at least one canister of chemical spray from another rioter and passing it to his brother,

3

Isaac Westbury, who then offered it to rioters attempting to incapacitate uniformed officers defending a tunnel entrance to the Capitol Building:







(4) aiding and abetting his brother and then grabbing a police shield and rushing into the tunnel[2]

as other individuals discharged pepper spray and assaulted uniformed officers with all manner of

foreign objects:



_____

[2] At about the same time, an MPD officer was pulled by rioters into the crowd.



and (5) retrieving another shield to be used in attacking the officers:



Although it is true that "Mr. James is presumed to be entirely innocent of the indictment under the law," ECF No. 63 at 19, section 3142(g) compels that the Court "shall consider" the nature and circumstances of his many violent crimes and the great weight of the evidence of his guilt. *See* 18 U.S.C. § 3142(g)(1) & (2). To be clear, James is extremely unlikely to overcome the video and photographic evidence that he violently entered the Capitol Building, interfered with the U.S. Capitol Police, aided and abetted the use of chemical agents against MPD officers, and assaulted those officers with a stolen police shield while fellow rioters attacked them with foreign objects and pepper spray. And the Government can think of no legal justification for James committing those egregious crimes against our Nation and its sworn officers.

## II.     Violations of James's Pretrial Release Conditions

James acknowledges that the Government need only establish clear and convincing evidence that he violated the conditions of his release. *See* ECF No. 63 at 5. But he devotes the majority of his opposition to making easily disproved factual assertions, debating extraneous issues, and creating evidentiary burdens that are found nowhere in federal law. There is no ambiguity – the Court ordered that James may not possess weapons and must comply with pretrial supervision. *See* ECF No. 16 at 2-3. He knowingly violated both conditions, refused on multiple occasions to remedy his noncompliance, and then threatened this Court's officers such that they discontinued their inspection and refused to return until he is removed from his parents' basement. James's flimsy arguments to the contrary should not be taken seriously.

James was repeatedly told, verbally and in writing, that he was not to possess weapons, and was repeatedly told, verbally and in writing, what constitutes a weapon for purposes of his supervision. Then he was repeatedly told, through three reports submitted to the Court, that he was in violation of the weapons provision. None of the commands were remotely "ambiguous,"

as James now contends.  *See* ECF No. 63 at 15.

On October 6, 2021, just after his arrest, the Probation Officer told James – and confirmed by email – that James was not to possess firearms, destructive devices, or weapons.  The Pretrial Services Officer wrote, "To everyone, there should be no weapons at your residence.  Let me know if there is any confusion or you need further clarification." *See* Exhibit A.  James was not confused. He did not seek clarification.  But a few weeks later, on October 20, 2021, the Pretrial Services Officer reported finding in the Westbury home "[a] pellet gun, some other antique firearm (replica?) that did not appear to be functioning, a compound bow and arrows, a shotgun shell, multiple bladed weapons and several knives that I would refer to as 'buck knives.'"  ECF No. 25 at 2.  Among those weapons, the Officer discovered on James's basement floor the knife set that James now refers to as "antique family heirlooms," "Civil War era collectors' items," "antique collectibles," and "antique cutlery and family heirloom sharpening steels."  ECF No. 63 at 10, 15.



The Pretrial Services Officer told James on October 20, 2021 that he deemed all such items

weapons and directed James to remove them from the home.  ECF No. 25 at 3.  In a follow-up email on the same day, the Officer explained, "The conditions of release include that you are not to have possession of any firearms, weapons, or destructive devices.  While … I understand you may have questions regarding specific items, and whether they qualify as a weapon, I would ask you request clarification for any items in question."  Exhibit B.  The Officer ordered James to remove, within 24 hours, "knives with blades over 6 inches," and directed that "other knives should be properly stored and serve a purpose other than as a weapon."[3]  *Id.*  James did not seek clarification from the Officer or from the Court when his violation was raised during an October 29, 2021 hearing.  He simply said, through counsel, that he would comply.  He did not.

On February 15, 2022, the Pretrial Services Officer returned to James's basement dwelling. Although James apparently had removed some of the weapons, the Officer still found – now "displayed in an imperfect fashion" on James's bookshelf, *see* ECF No. 63 at 10 – the same pile of knives that previously rested on his floor.  *See* ECF No. 44 at 2.



---

[3] James therefore falsely asserts that he "was never told to get rid of all knives, or to store all knives in a secure location, or even to properly store all knives in the kitchen."  ECF No. 63 at 9.

James did not express confusion that these items were deemed by Pretrial Services to violate the Court's order, but instead showed defiance. The Officer explained in a February 18 violation report that James, "stated he did not feel he had to [remove the knives] and directed me to report it to the Court if I thought it was an issue." *Id.* The officer did so. But again, James did not remove the knives or seek clarification from the Court; he simply continued to ignore the directions of the Pretrial Services Officer.

Then, in June 2022, the Pretrial Services Officer observed three of the same "antique family heirlooms" on top of the bookshelf, "displayed in an imperfect fashion" on a pile of papers and under a matted teddy bear. Apparently disagreeing that "they are sharpening steels and not knives at all," ECF No. 63 at 10, James raised his voice at the Pretrial Services Officer stating, "you tried to put me in jail over some knives" before becoming "increasingly agitated," following the officers, yelling, and "taking an inappropriate and threatening position[.]" ECF No. 58-1 at 2. The Officer reported these threats to D.C. Pretrial Services just four business days later. *See id.*



The Government does not seek revocation pursuant to 18 U.S.C. § 3148(b)(1)(A) on the basis that James broke the law, but instead under § 3148(b)(1)(B) because he plainly violated his conditions of release.  There is no doubt that James knowingly and repeatedly refused to comply with the instructions of his Pretrial Services Officer.  He then menaced the Pretrial Services Officers.  These are "actual, bright-line violations," ECF No. 63 at 7, no matter if James believes this Court's officers to be "unreasonable" or "unprofessional," or their concerns to be "trivial matters," *id.* at 10, 13 n.1, 17.  Whether James could be prosecuted for weapons possession under federal law, *see id.* at 11-13, or criminal threats against the Officer, *see id.* at 16-18, or even lawfully sell or transport the knives across international lines, *see id.* at 10, is utterly irrelevant. These issues are all distractions from James's consistent refusal to comply with the Court's orders and confrontational conduct toward the Court's officers.

The Court should pay no attention to James's disingenuous attempts to distract the Court with extraneous debates about the true nature of the aged and corroded cutlery set in his bedroom or the replica gun briefly observed as the officers left the Westbury home for their own safety.[4] James has been captured on scores of videos assaulting law enforcement officers on January 6, 2021, and this Court's officers determined that he should remove items from his bedroom that could pose a safety risk to them and that served no non-weapon purpose.  James could have complied with the officers' instructions and the Court's order at any moment from October 2021

---

[4] There is nothing "frivolous or comedic," ECF No. 63 at 13, about the circumstances of the officers' visit to James's basement dwelling on June 17, 2022.  James delayed the officers' entry to the basement by 10 to 15 minutes.  The officers then observed three knives that they believed posed a safety risk.  ECF No. 58-1 at 2. James descended into the basement, escalating the situation "very quickly with little provocation."  *Id.* at 3.  Because they left without fully assessing the basement, the officers could not further investigate what they believed to be a "replica gun" on the mantel to determine whether it was a weapon or a "Pony Boy Cap Gun," as James asserts.  *Id.*; *see also* ECF No. 63 at 13, 28.

through June 2022 so they would not be accessible as weapons against the officers, but he choose

defiance "over what James felt were the officer's sudden overzealousness regarding trivial

matters." ECF No. 63 at 17. The Government disagrees that the safety of the Court's Pretrial

Services officers and compliance with the Court's orders constitute "trivial matters."

The Court also should dismiss James's cynical argument that his "raised voice,"

"comments of an accusatory nature," fighting stance, and otherwise "inappropriate and threatening

position" against the Court's officers, *see* ECF No. 58-1 at 2, was simply "nervous small talk of

the kind that is typical of supervisees during high-stakes inspections," ECF No. 63 at 17. James

cannot be serious – and should not be taken seriously – when he contends that his conduct rushing

after the officers as they left his room, blocking their path, assuming a fighting stance, and yelling

at them, constituted "merely verbally challenging a probation officer's legal interpretation of

terminology," and was "designed to relax the tension of the moment, while probation agents

unprofessionally sought to escalate hostility." ECF No. 63 at 17 n.1. No matter the glib rhetoric

he now employs to insult the Pretrial Services officers and brush off his threatening conduct, James

insisted on escalating the situation such that the Probation Officers "determined that the situation

was not safe and the meeting should be ended immediately." ECF No. 58-1 at 2.

### III.     Sanctions for Violation of a Release Condition

The Government submits that the 18 U.S.C. § 3142(g) factors, including the egregious

crimes charged, the significant weight of the evidence against James, and the nature of his pretrial

release violations, establish that there is no condition or combination of conditions of release that

will assure that James will not pose a danger to the safety of any other person or the community.

*See* 18 U.S.C. § 3148(b)(2)(A).   Moreover, James's refusal – even after repeated verbal

admonishments, written instructions, and reports of violation – to comply with the Court's order

and Pretrial Services directions shows that he is unlikely to abide by any condition or combinations

of release.  *See* 18 U.S.C. § 3148(b)(2)(B).  James has not complied since his October 2021 arrest

with conditions he believes to be "trivial," so it is difficult to trust any assurances that he suddenly

will abide by his release conditions or cooperate with officers he considers "unreasonable" and

"unprofessional."


For the reasons set forth in the Government's motion, *see* ECF No. 62, and herein, the

government respectfully requests that this Court issue an arrest warrant for the defendant, revoke

his pre-trial release order, and detain him pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney,
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55
Washington, D.C.  20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov
